UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.     )<br>)<br>DEREK REGO     ) | Criminal No. 1:20-cr-10194-NMG |

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE INDICTMENT

The defendant, Derek Rego, has moved this Honorable Court, pursuant to Fed. R. Crim. P. 12(b)(3)(B)(v), to dismiss Count 1 of the indictment charging escape in violation of 18 U.S.C. § 751(a). As reasons and grounds therefor, Mr. Rego submits that he did not knowingly leave the custody of the Attorney General without permission, such that the issues presented in this motion can be decided at this stage of the case because the operative facts are undisputed. See United States v. Ferris, 807 F.2d 269, 271 (1st Cir. 1986); United States v. Todd, 446 F.3d 1062, 1068 (10th Cir. 2006).

## BACKGROUND

In an indictment dated September 15, 2020, Mr. Rego was charged with one count of escape. The indictment alleges that:

> From on or about April 3, 2020, through on or about May 4, 2020, in the District of Massachusetts, the defendant, Derek Rego, did knowingly escape from the custody of the Attorney General and his authorized representative, and from any institution and facility in which he was confined by direction of the Attorney General, by virtue of a judgment of the United States District Court for the District of Massachusetts upon conviction of the offense of distribution of cocaine base, in violation of Title 21, United States Code, Section 841(a)(1). All in violation of Title 18, United States Code, Section 751(a).

(Ex. A).

The relevant circumstances supporting the charges are summarized in paragraphs 5-11 in the affidavit of John Wickham of the United States Marshal Service ("ATF") filed in support of the complaint:

¶ 5. On September 5, 2012, REGO was sentenced in the United States District Court for the District of Massachusetts to a period of incarceration of 120 months followed by 3 years of supervised release, as a result of a conviction for Distribution of Cocaine Base in violation of 21 U.S.C. § 841(a)(1). See docket # 11-CR-10306-RWZ.

¶ 6. On or about January 8, 2020, as part of the committed sentence for the federal conviction outlined in paragraph 5 above, REGO received a furlough transfer from the Federal Correctional Institute in Berlin, New Hampshire, to the Coolidge House Residential Re-entry Center ("RRC"), located at 307 Huntington Avenue, in Boston, Massachusetts, to reside and serve the remainder of his confined sentence at the RRC until his release date of June 5, 2020. REGO traveled by bus to South Station and arrived at the RRC on the afternoon of January 8, 2020.

¶ 7. While residing at the RRC and as part of the reentry program, REGO was permitted to be employed and was employed by the Pine Street Inn in Boston. On March 25, 2020, REGO informed the RRC that two coworkers at the Pine Street Inn, had tested positive for COVID-19. At the direction of the RRC on that same date of March 25, 2020, REGO was instructed to and began a fourteen-day quarantine at his approved pass site, namely, the Boston residence of his girlfriend, SC (pass site"). Prior to beginning this 14-day quarantine period, REGO was informed by the RRC that he would receive random telephone calls and pass site visits by RRC staff to ensure his compliance. RRC staff told REGO that after the fourteen-day quarantine ended on April 9, 2020, REGO was required to return to the RRC.

¶ 8. On March 26, 2020, RRC staff began conducting pass site spot check calls that REGO answered at 10:22 a.m., 12:43 p.m., 1:26 p.m., 2:04 p.m. and 9:02 p.m. Similar spot check calls were placed daily, and an in-person spot check was conducted on March 30, 2020. REGO remained compliant and answered the random calls until April 3, 2020.

¶ 9. On April 3, 2020, calls to REGO were made at 4:55 a.m. and 8:12 a.m.  During the 8:12 a.m. call, REGO stated to RRC staff that he had a bad cold coupled with coughing and a sore throat, but without fever. At 8:00 p.m., RRC staff member AM attempted an in-person spot check at REGO's temporary pass site and placed several calls to REGO's landline and personal cellular telephone with negative results. At approximately 8:14 p.m. REGO's girlfriend, SC texted RRC staff member AM, stating that REGO was in the hospital; that she was not at home (i.e., the pass site) but her daughter was and that the telephone kept ringing. SC called RRC staff member AM and stated that she believed that REGO had gone to the hospital sometime after she left for work at 2:00 p.m. RRC staff began calling area hospitals and confirmed that

2

> REGO was not a patient at any of the area hospitals. RRC staff also called the Boston Police Department ("BPD") to determine if REGO was in custody and learned that he was not. Additionally, several unanswered calls were placed to REGO's phone number. RRC staff placed REGO on escape status at 10:55 p.m. on April 3, 2020, and the USMS was notified shortly thereafter REGO has never returned to the RRC and as of April 3, 2020, was considered an active escape from federal custody.

(Ex. B).

In conjunction with the Boston police, Mr. Rego was arrested at the pass site on May 4, 2020. Id. at ¶¶ 10-11. Consistent with the above narrative, discovery has been produced in this matter and there was no document produced that demonstrates that Mr. Rego was given written notice of the conditions and length of his quarantine or residence at the pass site.

## ARGUMENT

A defendant may move to dismiss an indictment or information where it fails to state an offense. Fed. R. Crim. P. 12(b)(3)(B)(v). "An indictment is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense." United States v. Dashney, 117 F.3d 1197, 1205 (10th Cir.1997). Challenging an indictment is not a means of testing the strength or weakness of the government's case, or the sufficiency of the government's evidence. United States v. Hall, 20 F.3d 1084, 1087 (10th Cir.1994).

It is well established that an "indictment should be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true." Id. "An indictment is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense." United States v. Dashney, 117 F.3d at 1205 and United States v. Todd, 446 F.3d 1062, 1067 (10th Cir. 2006).

Thus, "[g]enerally, the strength or weakness of the government's case, or the sufficiency of the government's evidence to support a charge, may not be challenged by a pretrial motion." Hall, 20 F.3d at 1087. However "'in limited circumstances,'" a District Court may "'dismiss charges at the pretrial stage . . . where the operative facts are undisputed and the government fails to object to the [D]istrict [C]ourt's consideration of those undisputed facts in making the determination regarding a submissible case.'" Todd, 446 F.3d 1 at 1069, quoting Hall, 20 F.3d at 1088. "Dismissals under this exception are not made on account of a lack of evidence to support the government's case, but because undisputed evidence shows that, as a matter of law, the Defendant could not have committed the offense for which he was indicted." Id.

Here, Mr. Rego is charged with escape, pursuant to 18 U.S.C. § 751(a). That statute provides:

> Whoever escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or magistrate judge, or from the custody of an officer or employee of the United States pursuant to lawful arrest, shall, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense, be fined under this title or imprisoned not more than five years, or both; or if the custody or confinement is for extradition, or for exclusion or expulsion proceedings under the immigration laws, or by virtue of an arrest or charge of or for a misdemeanor, and prior to conviction, be fined under this title or imprisoned not more than one year, or both.

18 U.S.C. § 751(a).

Relatedly, 18 U.SC. § 4082(a) explains that "the willful failure of a prisoner to remain within the extended limits of his confinement, or to return within the time prescribed to an institution or facility designated by the Attorney General, shall be deemed an escape from the custody of the Attorney General punishable as provided in chapter 35 of this title." 18 U.SC. § 4082(a).

4

This District's model jury instructions identify the elements of the offense as follows:

1. <u>First</u>, that on [date], [defendant] was in federal custody at [facility];
2. <u>Second</u>, that [he/she] was in custody because [he/she] had been [e.g., arrested for a felony charge; arrested for a misdemeanor charge; convicted of a crime];
3. <u>Third</u>, that [he/she] [left; attempted to leave] [facility] without permission; and
4. <u>Fourth</u>, that [he/she] knew that [he/she] did not have permission to leave.

(See Pattern Jury Instruction 4.18.751).

Significantly, the fourth element, which requires proof of the defendant's intent through evidence of the defendant's knowledge that he lacked permission, is well established. <u>United States</u> v. <u>Davis</u>, 8 F.3d 923, 927-9228 (2d Cir. 1993) (we must determine, "whether sufficient proof exists to establish that the accused possessed the requisite criminal intent" and, if so, "whether the accused's conduct may be viewed as sufficiently corroborative of his established criminal intent"). The statute "does not require that a defendant have a specific intent to escape; all the prosecution must show is that the defendant knew that his actions would result in his absence from confinement without permission." <u>United States</u> v. <u>Taylor</u>, 933 F.2d 307, 310 (5th Cir. 1991).

The Government cannot establish that Mr. Rego knowingly left the facility without permission or knowingly failed to so return. As an initial matter, the indictment should be dismissed insofar as it alleges criminal conduct from "on or about April 3, 2020, through on or about May 4, 2020," because Mr. Rego was purportedly told to return to the facility following quarantine, which would not have been until April 9, 2020. Although the facility chose to put Mr. Rego on violation status on April 3 after they were unable to reach him by phone, between April 3 and April 9 he had not failed to "return within the time prescribed to an institution or facility," during that period of time. 18 U.SC. § 4082(a). The statute only permits convictions for knowing failure to return, and no such conduct is present for the period of April 3 through April 9, 2020.

Nor can the Government establish that Mr. Rego knowingly left the facility without permission or knowingly failed to so return for the period of April 10 through May 4, 2020. In late March and early April 2020, the COVID-19 epidemic was spreading like wildfire and creating chaos throughout America. As from the middle of March through April 2020, Court had gone virtual, schools had been closed, and everyone except for essential workers were expected to minimize contact with persons outside their home in keeping with Center for Disease Control ("CDC") recommendations. Most significantly, at this time, no vaccine existed, no specialized treatment for COVID-19 had been developed yet, and hospitals in Massachusetts were overwhelmed with COVID-19 or suspected COVID-19 cases. COVID-19 testing was extremely limited and virtually non-existent for the public at large. The procedure the public was expected to follow at that time was to self-isolate upon showing of any COVID-19 symptoms. Moreover, the information known about the disease at the time was very limited, such as the specific range of symptoms and the incubation period.

On March 25, 2020, Mr. Rego was working at the Pine Street Inn when a fellow employee began to exhibit symptoms consistent with COVID-19. Although Mr. Rego himself exhibited no symptoms, based on his exposure to what tuned out to be two fellow employees who were believed to have COVID-19, he was instructed to leave the facility to go to his girlfriend's residence for a 14-day quarantine. Mr. Rego was asked to quarantine at his girlfriend's residence, but he was not on home confinement. The 14-day quarantine period, consistent with CDC regulations, however, only applied if the person remained asymptomatic. If a person became symptomatic during that period, the quarantine period would have to be adjusted as that person may have been infected with COVID-19.

Mr. Rego reported that he was experiencing COVID-19 symptoms on April 3, 2020. Following then-CDC recommendations, Mr. Rego's quarantine period would have had to be extended to at least April 17, 2020. Had Mr. Rego's symptoms continued, his quarantine period would have had to be extended further. The facility never spoke with Mr. Rego on April 3, 2020, and did not leave a voicemail or make further attempts to contact Mr. Rego. The facility ceased to make any attempt to contact Mr. Rego after 10:40 P.M. on April 3, 2020, or provide any instruction. Under these circumstances, the Government cannot establish that Mr. Rego knowingly failed to leave the facility without permission or knowingly failed to so return for the period of April 10 through May 4, 2020. The indictment should be dismissed.

## CONCLUSION

Wherefore, for the reasons stated above, on the undisputed facts of the case, the government cannot establish, as a matter of law, that Mr. Rego committed the crime of escape charged in Count 1 of the indictment. This Court should allow Mr. Rego's motion to dismiss.

Respectfully Submitted,

**Derek Rego**

by his attorney,

*/s/ Jason Benzaken*

Jason Benzaken, Esq.
Benzaken, Maguire, Sheehan & Wood, LLP
1342 Belmont Street, Suite 102
Brockton, MA 02301
(Tel) 508-897-0001
(Fax) 508-587-5455
BBO No. 658869
*jbenzaken@bmswlaw.com*

Dated: April 29, 2024

## **Certificate of Service**

  I hereby certify that a copy of this motion has been served upon the parties and counsel for the United States by CM/ECF.

*/s/ Jason Benzaken*
Jason Benzaken

Dated: April 29, 2024